UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRADY SMITH,

             Plaintiff,                     CIVIL ACTION NO. 08-14002

        v.                          DISTRICT JUDGE MARIANNE O. BATTANI

BARBARA SAMPSON, MIGUEL        MAGISTRATE JUDGE VIRGINIA M. MORGAN
BERRIOS, JAMES ATTERBERRY,
STEPHEN H. DEBOER, ARTINA
TINSLEY HARDMAN, ENID
LIVINGSTON, SHAREE BOOKER,
JAMES QUNILAN, JOHN SCHLINKER,
and LAURIN THOMAS,

             Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

       This is a *pro se* 42 U.S.C. § 1983 action in which plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC) and serving a life sentence without the

possibility of parole, alleges the application of changes in the state of Michigan's laws to him

violates the *Ex Post Facto* Clause of the United States Constitution.  U.S. Const. art. 1, § 10, cl.

1.  The matter comes before the court on defendants Thomas, Sampson, Berrios, Atterberry,

Deboer, Hardman, Booker and Quinlan's Motion to Dismiss/Summary Judgment (D/E #30) and

defendants Schlinker and Livingston's Motion to Dismiss/Summary Judgment (D/E #36).  For

-1-

the reasons discussed below, this court recommends that defendants' motions be **GRANTED**

and that plaintiff's complaint be dismissed for failure to state a claim upon which relief can be

granted.

## II. Background

On September 17, 2008, plaintiff filed the complaint against defendants in this matter

(D/E #1).  In that complaint, plaintiff alleges that he was sentenced to life without possibility of

parole on November 20, 1979 and, at that time, he was screened to determine when he would be

eligible for a commutation of sentence recommendation.  (Complaint, ¶¶ 4-5)  According to

plaintiff, he was told that he would be required to serve about eighteen (18) years before a

favorable recommendation would be made to the governor regarding commutation of plaintiff's

sentence.  (Complaint, ¶ 10)  Plaintiff also claims that he was told that, while the governor has

the ultimate authority over commutation decisions, the governor generally follows the

recommendation of the Michigan Parole Board.  (Complaint, ¶ 10)  Plaintiff further alleges that,

because of changes[1] made to the state of Michigan's laws in 1992 and 1999, defendants, who are

the members of the Michigan Parole Board, will now never recommend his case for

commutation.  (Complaint,  ¶¶ 7, 9-10)

---

[1] Among the changes alleged by plaintiff were changes in the frequency of hearings and personal interviews, changes in the composition and philosophy of the Michigan Parole Board, and the elimination of appeals and written explanations.  (Complaint, ¶¶ 19, 31, 34, 39, 41-43, 45, 145-154)

As stated in the complaint, plaintiff "seeks relief for the Defendants' retroactive use of substantive parole and commutation standards that were not in effect when he was convicted, in violation of the ex post facto (sic) clause of the U.S. Constitution.  (Complaint, ¶ 18)  As relief, plaintiff seeks a declaratory judgment that defendants' application of the statutory changes in parole and commutation laws, policies and standards cumulatively violates the *Ex Post Facto* Clause of the United States Constitution.  (Complaint, pp. 17-18)  Plaintiff also seeks an order appointing a special parole board panel to review plaintiff's case for further commutation applications.  (Complaint, p. 18)  Plaintiff further requests that the court order defendants to conduct a new commutation hearing using the pre-1992 parole laws, policies, and standards that were in effect when plaintiff committed his crimes.  (Complaint, p. 18)

On February 3, 2009, defendants Thomas, Sampson, Berrios, Atterberry, Deboer, Hardman, Booker and Quinlan filed a Motion to Dismiss/Summary Judgment (D/E #30).  In that motion, those defendants argue that plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution.  Defendants also argue that the United States Supreme Court has held that a past commutation practice or history does not vest any rights in an inmate and that plaintiff failed to state a claim under 42 U.S.C. § 1983.  Defendants further argue that plaintiff also failed to state a claim under the *Ex Post Facto* Clause and that, even if plaintiff did state such a claim, the indisputable facts establish that the Michigan Parole Board does not have a "no commutation" policy because they sent recommendations of merit to the governor for the majority of first-degree murderers that they held commutation public hearings for in 2008.

-3-

On March 19, 2009, defendants Schlinker and Livingston also filed a Motion to Dismiss/Summary Judgment (D/E #36). In that motion, Schlinker and Livingston adopted and incorporated the arguments made in the other defendants' motion.

On April 2, 2009, plaintiff filed his response to defendants' motion (D/E #40). In that response, plaintiff argues that defendants' position that plaintiff's claims are barred by the Eleventh Amendment is contrary to Supreme Court precedent. Plaintiff also argues that the question is not whether defendants have the authority to release inmates, but whether, in practice, the post-1992 Parole Board's policies and procedures have altered the review of commutation applications. Plaintiff further argues that defendants' affidavits regarding Michigan Parole Board recommendations only underscores the need for discovery. According to plaintiff, he has stated a valid claim resting entirely on the *Ex Post Facto* Clause and not, as defendants contend, on due process grounds.

On May 20, 2009, plaintiff filed an affidavit pursuant to Fed. R. Civ. P. 56(f) (D/E #43). In that affidavit, plaintiff states that he has filed discovery requests in order to discover the necessity of a favorable recommendation by the Michigan Parole Board in order for there to be a commutation, the number of favorable and unfavorable recommendations by the Michigan Parole Board, the number of times that Michigan Parole Board has determined that on its own initiative that an application has merit, the review procedures for a commutation in the case of an inmate sentenced to life without parole, the standards used by the Michigan Parole Board and when those standards changed, as well as statistics relating to pre-1992 recommendations.

-4-

## III. Discussion

### A. Dismissal

**1. Standard of Review**

Defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) permits a district court to dismiss a plaintiff's complaint

for "failure to state a claim upon which relief can be granted."  In considering whether to grant a

defendant's motion to dismiss pursuant to Rule 12(b)(6) a district court must accept as true all

the allegations contained in the complaint and construe the complaint liberally in favor of the

plaintiff.  Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006).  A district court need not,

however, accept as true legal conclusions or unwarranted factual inferences.  Kottmyer, 436 F.3d

at 688.  A claim survives a motion under Fed. R. Civ. P. 12(b)(6) "where its '[f]actual allegations

[are] enough to raise a right to relief above the speculative level on the assumption that all of the

complaint's allegations are true.'"  Zaluski v. United American Healthcare Corp., 527 F.3d 564,

570 (6th Cir. 2008), quoting Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1959, 167

L.Ed.2d 929 (2007).  "In reviewing a Rule 12(b)(6) motion to dismiss, [we treat] all well-pleaded

allegations in the complaint as true, and [we] find dismissal proper only if it appears beyond

doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or

her to relief."  Zaluski, 527 F.3d at 570 quoting Downie v. City of Middleburg Heights, 301 F.3d

688, 693 (6th Cir. 2002) (internal citations omitted).  "[W]hen a complaint adequately states a

claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to

find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombley, 127 S.Ct. at 1970.

### 2. Eleventh Amendment Immunity

Defendants assert that as state officials they are immune from this lawsuit under the Eleventh Amendment. In general, the Eleventh Amendment immunizes state officials from suit in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Supreme Court, however, recognized an important exception to this general rule in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where it held that the Eleventh Amendment does not bar a lawsuit seeking an injunction against a state official prohibiting the state official from enforcing a state statute that allegedly violates the United States Constitution. "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting Justice O'Connor's concurring opinion in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)).

Here, plaintiff's complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Plaintiff alleges that the applicable Michigan laws, policies and procedures, as currently applied, violate the United States Constitution, and he seeks

only injunctive and declaratory relief, not a money judgment or any other retrospective relief. Therefore, defendants are not entitled to immunity under the Eleventh Amendment pursuant to the "straightforward inquiry" that applies to this issue.  Verizon Maryland, 535 U.S. at 645, 122 S.Ct. 1753 ("Here Verizon sought injunctive and declaratory relief.... The prayer for injunctive relief-that state officials be restrained from enforcing an order in contravention of controlling federal law-clearly satisfies our 'straightforward inquiry.'")

### 3. Due Process

Defendants also argue that plaintiff has failed to state a claim upon which relief can be granted with respect to any alleged due process violation because plaintiff does not have a constitutional right to commutation of his sentence.  However, while it is true that a plaintiff must demonstrate that he possessed a constitutionally protected property or liberty interest in order to establish a procedural due process violation, see, *e.g.*, Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, 470 F.3d 286, 296 (6th Cir. 2006); Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006), plaintiff has not alleged a due process violation in this case.  Both plaintiff's complaint and his response to defendants' motion are clear on this issue.

### 4. *Ex Post Facto*

The *Ex Post Facto* Clause of the Constitution, U.S. Const. art. I §§ 9 and 10, forbids the government from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then

-7-

prescribed." Weaver, 450 U.S. at 28 (internal quotation omitted). "To fall within the *ex post*

*facto* prohibition, two elements must be present: (1) the law must apply to events occurring

before its enactment, and (2) it must disadvantage the offender affected by it." United States v.

Reese, 71 F.3d 582, 585 (6th Cir.1995). The *Ex Post Facto* Clause is intended to provide fair

warning about new punishments and to discourage arbitrary and oppressive legislation. Weaver,

450 U.S. at 28. What legislative adjustments transgress the ex post facto clause is a matter of

degree and the Supreme Court has previously declined to articulate a single formula for

identifying those legislative changes that have a sufficient effect on substantive crimes or

punishments to fall within the constitutional prohibition. California Dep't of Corr. v. Morales,

514 U.S. 499, 509-510, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (citations omitted).

As discussed above, the plaintiff in this case is serving a life sentence without the

possibility of parole and, given that sentence, it seems odd to apply *ex post facto* analysis to

changes in the law that cannot result in plaintiff serving more time than the maximum sentence

permissible for his offense of conviction at the time of conviction and that only affect his chance

at receiving a commutation. Garner v. Jones, 529 U.S. 244, 258, 120 S.Ct. 1362, 146 L.Ed.2d

236 (2000) (Scalia, J. concurring) ("Any sensible application of the *Ex Post Facto* Clause ...

must draw a distinction between the penalty that a person can anticipate for the commission of a

particular crime, and the opportunities for mercy or clemency that may go to the reduction of the

penalty."). Additionally, the Sixth Circuit has specifically rejected a claim that new parole

regulations can serve as a basis for allegations of an *ex post facto* violation by an inmate serving

-8-

a life sentence without possibility of parole because the new regulations do nothing to increase the punishment to which the plaintiff in that case was originally sentenced.  See Hunt v. Wilkinson, 79 Fed. Appx. 861, 862 (6th Cir. 2003) ("Hunt was sentenced, as noted above, to life in prison, consecutive to other terms of imprisonment, with the possibility of a discretionary grant of parole.  The new regulations, which may increase the periods between parole hearings, and do not give Hunt a projected release date, do nothing to increase the punishment to which Hunt was originally sentenced.").  See also Ross v. Schwarzenegger, No. 1:08-cv-00241, 2008 WL 4937599, *3 (E.D. Cal. 2008) (Wunderlich, M.J.) (dismissing an *ex post facto* claim because, even assuming that appearing before the Board of Prison Terms would impact the plaintiff's eligibility for a commuted sentence from the Governor's Office, lowering the probability of receiving a commuted sentence does not amount to increasing the measure of punishment attached to his crimes).

Nevertheless, although it was impossible for plaintiff to serve a longer term of imprisonment than his maximum imposed sentence, this court finds that plaintiff's claim is not barred on that basis.  In Garner, the Supreme Court remanded the case to the district court so that the respondent, who was serving a sentence of life imprisonment with the possibility of parole, could engage in discovery in order to attempt to establish that the challenged parole created a significant risk of increased punishment for the respondent.  Garner, 529 U.S. at 247-249. Moreover, the Sixth Circuit has analyzed a plaintiff's claim that changes in parole violated the *Ex Post Facto* Clause despite the fact that he was serving a life sentence.  Michael v. Ghee, 498

-9-

F.3d 372, 382-383 (6th Cir. 2007),   In Michael, the Sixth Circuit also noted the conflict between

its decision in that case and the earlier Sixth Circuit case of Hunt without addressing that earlier

case in any great detail.  Michael, 498 F.3d at 382.  In this court's view, Michael, which unlike

Hunt is a published case, has the better view and, as discussed below, it properly applies Garner

by acknowledging the possibility that changes in the law could result in a longer period of actual

incarceration, even if an inmate is serving a life sentence, given the possibility of parole, early

release, etc..  Additionally, this court would note that Hunt only involved a challenge to the

application of parole regulations by an inmate serving a life sentence without the possibility of

parole and that this case is not limited to such a challenge.

     The relevant inquiry after Garner, therefore, is whether retroactive application of the

1992 and 1999 changes in Michigan law identified by plaintiff create a "sufficient risk of

increasing the measure of punishment attached to the covered crimes." Garner, 529 U.S. at 250;

Michael; 498 F.3d at 384.  A plaintiff can satisfy this burden in one of two ways.  Michael; 498

F.3d at 384.  First, plaintiff can establish an *ex post facto* violation if he can show that the

changes, on their face, show a significant risk of increased incarceration.  Garner, 529 U.S. at

255; Michael; 498 F.3d at 384.  Second, when the changes do not by their own terms show a

significant risk, plaintiff "must demonstrate, by evidence drawn from the [new law's] practical

implementation by the agency charged with exercising discretion, that its application will result

in a longer period of incarceration than under the earlier [law]." Garner, 529 U.S. at 255.

Moreover, plaintiff need not show an actual increase in punishment, but rather a "sufficient risk"

-10-

of increased punishment.  Michael, 498 F.3d at 384; Dyer v. Bowlen; 465 F.3d 280, 288 (6th Cir. 2006).

In this case, defendants first argue that plaintiff has failed to state an *ex post facto* claim because plaintiff does not have a protected liberty interest.  However, defendants' argument must be rejected because defendants' actions need not impair a vested, affirmative or enforceable right in order to be prohibited by the Ex Post Facto Clause.  See Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) ("a law need not impair a 'vested right' to violate the *ex post facto* prohibition.  Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clause, which solely protect pre-existing entitlements." (citations omitted)).

Defendants also argue that plaintiff has failed to state a claim for an *ex post facto* violation because the Sixth Circuit has specifically held that application of the 1992 amendments to Michigan parole laws regarding the frequency of parole review hearings does not violated the *Ex Post Facto* Clause.  See Shabazz v. Gabry, 123 F.3d 909, 914 (6th Cir. 1997).  In Shabazz v. Gabry, 123 F.3d 909 (6th Cir.1997), the Sixth Circuit analyzed the 1992 amendments to Michigan's parole laws regarding the frequency of parole review hearings and specifically addressed the amendments as they pertained to inmates who were convicted between 1982 and 1992, and received long, indeterminate sentences.  Under the law at the time of their sentencing, those inmates were to be interviewed by a member of the parole board after four years and every two years thereafter, although inmates with long, indeterminate sentences became eligible for

-11-

parole only after serving ten years of their sentence.  Shabazz, 123 F.3d at 911 (citing M.C.L. §§

791.234 and 791.244, effective 1982).  Pursuant to the 1992 amendments, inmates with long,

indeterminate sentences receive their initial parole interviews after ten years and every five years

thereafter.  Shabazz, 123 F.3d at 910 (citing M.C.L. §§ 791.234 and 791.244, effective 1992).

Applying the test set forth in Morales, the Sixth Circuit held that the 1992 amendments

governing frequency of parole review hearings did not violate the *Ex Post Facto* Clause.

Shabazz, 123 F.3d at 914.  The Sixth Circuit reasoned that the "1992 amendments do not change

the standard for parole, but allow prisoners ample opportunity to petition the parole board for

interviews.  Further, the 1992 amendments allows the parole board to grant parole interviews of

its own volition, and to grant prisoners parole without an interview."  Shabazz, 123 F.3d at 914.

See also Hunt v. Wilkinson, 79 Fed. Appx. 861, 862 (6th Cir. 2003) (rejecting the plaintiff's

claim that the application of new parole regulations, which may have increased the period

between parole hearings, violated the *Ex Post Facto* Clause).

Moreover, while not argued by defendants, some of the other allegations found in

plaintiff's complaint have also been found to not to be *ex post facto* violations.  For example,

plaintiff appears to challenge the application of changes in the law regarding parole as well as

commutation, but the Sixth Circuit specifically noted in Shabazz that an inmate serving a

mandatory life sentence could not challenge the application of changes in parole laws on ex post

facto grounds because there was "no nexus between the frequency of parole interviews and the grant

of parole for these prisoners because they are never eligible for parole" and, therefore, "[i]t is

impossible for the 1992 amendments to increase the measure of punishment attached to their crimes." Shabazz, 123 F.3d at 914.

Similarly, plaintiff contends that changes in the parole board from a "civil service" entity to one under the direct control of Michigan's executive department have disadvantaged him. Under Michigan law enacted in 1992, the MDOC Director appoints a ten member parole board. The members receive an annual salary set by the state legislature, but are no longer within the State's civil service provisions. M.C.L. § 791.231a(1). The Director may remove parole board members for incompetency, dereliction of duty, malfeasance, misfeasance or nonfeasance in office. M.C.L. § 791.231a(3). However, while plaintiff correctly identifies the changes, neutrality on the part of a parole board does not require civil service protection, or employment by a different agency, a law degree, or election or appointment as a judicial officer. Morrissey v. Brewer, 408 U.S. 471, 486, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); see also Crowley v. Renico, 81 Fed. Appx. 36, 37 (6th Cir. 2003) (finding a claim that the Michigan Parole Board does not constitute a neutral and detached hearing body, based upon essentially the same arguments presented in the present case, to be without merit). Even civil service employees may be fired for reasons such as unsatisfactory service, failing to carry out their duties and obligations, or conduct unbecoming a state employee. See Young v. Trombley, No. 00-cv-10488-BC, 2002 WL 1461755, *2 (E.D. Mich. July 5, 2002) (Lawson, J.)( holding that "the fact that Parole Board members are no longer civil service employees does not give the Director greater discretion in firing them and does not make them more amenable to political influence." and that "[t]he bias

-13-

alleged by the [Plaintiff]-the 'general tendency of an administrative agency to serve the executive under which it derives its authority,'" and the "'general bias in favor of the alleged state interest or policy'"-does not render the agency unable to make an objective analysis. (quoting Hammond v. Baldwin, 866 F.2d 172, 176 (6th Cir. 1989)). See also Shultz v. Rubitschun, No. 1:05-CV-697, 2005 WL 3262435, *4 (W.D. Mich. November 30, 2005) (Bell, C.J.) (rejecting an ex post facto challenge to the 1992 statute that transformed the Parole Board from a "civil service" entity to an entity under the direct control of the governor); Bringard v. Caruso, No. 1:07-CV-160, 2008 WL 1776974, *12-13 (W.D. Mich. April 17, 2008) (Jonkers, J.) (finding that, the reasons as stated in Shultz, the plaintiff's *Ex Post Facto* Clause claim with respect to M.C.L. § 791.231a and the reorganization of the Parole Board should be dismissed).

Even considering the potential flaws in plaintiff's claims, this court does not recommend that plaintiff's complaint be dismissed for failure to state a claim upon which relief can be granted due to problems with plaintiff's specific allegations. Plaintiff's complaint is not limited to the changes identified by defendants or the court as being insufficient to violate the *Ex Post Facto* Clause. Moreover, plaintiff's complaint does not rest on any one specific change and, instead, he argues that it is the cumulative effect of the changes in the law that have violated his constitutional right. As discussed by the Honorable Nancy G. Edmunds with respect to parole procedures, a court must examine the cumulative changes in the law since an inmate's conviction:

> Defendants argue that the Court cannot consider the frequency change in inmates' parole hearings as set forth in the 1992 amendments because that was considered

-14-

> in *Shabazz*. This claim is incorrect. It ignores the fact that the Court must examine the cumulative changes in the parole procedures since an inmate's conviction. A state cannot continuously make minor changes in the parole process that, taken together, create a sufficient risk of an increased penalty; but, when looked at alone, would not violate the *Ex Post Facto* Clause. For example, a state makes change A to the parole procedure after Inmate is convicted. Inmate brings a suit challenging A, but a court finds that it does not create an *ex post fact* law. The state subsequently makes changes B, C, and D. Inmate is not precluded from bringing a Constitutional challenge. And, importantly, the court must be able to compare the original parole policy with the new policy (which includes change A as well as changes B, C, and D) to see if there is a sufficient risk of increasing the measure of punishment.

Foster-Bey v. Rubitschun, No. 05-71318, 2005 WL 2010181, *5 n. 10 (E.D. Mich. August 18, 2005) (Edmunds, J.). In light of defendants' lack of argument with respect to plaintiff's entire claim and the court's need to examine the cumulative effect of the changes alleged by plaintiff, plaintiff's complaint should not be dismissed for failure to state a claim upon which relief can be granted due to problems with plaintiff's specific allegations.

Defendants further argue that a commutation by the chief executive of the government is wholly discretionary and any past commutation practice or history does not vest any rights in an inmate. As discussed above, however, defendants' actions need not impair a vested, affirmative or enforceable right in order to be prohibited by the *Ex Post Facto* Clause. See Weaver, 450 U.S. at 29 ("a law need not impair a 'vested right' to violate the *ex post facto* prohibition. Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clause, which solely protect pre-existing entitlements." (citations omitted)).

Nevertheless, the fact that commutation is a matter of discretion for the governor of the state of Michigan in this case should preclude plaintiff's claim. The mere presence of discretion

does not displace the protections of the *Ex Post Facto* Clause.  Garner, 529 U.S. at 253.  See also

Michael, 498 F.3d at 382 (finding that changes in the law that affect discretion, rather than

mandate outcomes, are nevertheless subject to *ex post facto* scrutiny).  Cf. Vertin v. Gabry, 1995

WL 613692, *2 (6th Cir. 1995) (holding that, where amendments that do not divest the Parole

Board of its discretion in granting parole, the amendments do not qualify as *ex post facto* laws).

However, this case involves more than the discretion of parole boards, which was at issue in both

Garner and Michael, and instead involves the discretion of the highest executive in the state of

Michigan.

The power to grant commutations is given to the governor of the state in Michigan's

Constitution:

> The governor shall have power to grant reprieves, commutations and pardons
> after convictions for all offenses, except cases of impeachment, upon such
> conditions and limitations as he may direct, subject to procedures and regulations
> prescribed by law. He shall inform the legislature annually of each reprieve,
> commutation and pardon granted, stating reasons therefor.

Michigan Constitution 1963, Article 5, § 14.  The Michigan Supreme Court has found that "[t]he

power of pardon and commutation of sentence rests in the governor alone."  People v. Freleigh,

334 Mich. 306, 310 (1952) (citations omitted).  See also Meyers v. Jackson, 245 Mich. 692, 693

(1929) (holding that, under the constitutional power conferred on the governor to commute

sentences the matter of the commutation of a sentence rests entirely on executive clemency).

The Michigan Supreme Court has also found that the power conferred on the governor under the

constitution to grant pardons is almost unrestricted, and executive clemency is a matter of

-16-

discretion and that the coordinate branches of the government have nothing to do with the

pardoning power, except that the legislature may by law provide how applications are to be made

and is entitled to a report of actions taken.  <u>Rich v. Chamberlain</u>, 104 Mich. 436, 441 (1895).[2]

 Given that grant of authority, the two district courts within the Eastern District of

Michigan that have addressed this issue have both found that application of changes in the laws

regarding commutations do not violate the *Ex Post Facto* Clause of the United States

Constitution.  As found by the Honorable George Caram Steeh in <u>Lewis-El v. Simpson</u>:

> Moreover, even if a change in parole procedures might conceivably violate the *Ex Post Facto* Clause, retroactive changes in policies regarding the commutation of non-parolable life sentences does not violate the *Ex Post Facto* Clause.  See *Snodgrass v. Robinson*, 512 F.3d 999, 1002 (8th Cir. 2008).  This is because most parole procedures "are distinct from the highly personal, policy oriented, and legislatively unchecked authority" of Michigan's governor to grant sentence commutations.  *Id.* "The unpredictability of a wholly discretionary grant of commutation" in Michigan precludes plaintiff from demonstrating that any changes in M.D.O.C. policy regarding commutations raise a "significant risk" that he will be denied a commutation he otherwise would have received.  As such, plaintiff cannot demonstrate there is a significant risk his punishment will be longer than it would have been when PD-DWA-45.12 was in place.  Accordingly,

---

 [2]Defendants, *i.e.* the Michigan Parole Board, do have a role in commutations.  M.C.L. § 791.244 provides that, upon receipt of an application for reprieve, commutation or pardon, the Michigan Parole Board must review the application for commutation and determine if it has merit.  M.C.L. § 791.244(2)(a).  Regardless of its determination on merit, the Parole Board must deliver either the written documentation of the initiation or the original application with the board's determination regarding merit to the governor and retain a copy of each in its file pending investigation and hearing.  M.C.L. § 791.244(2)(b).  Moreover, if the Parole Board determines that the application does have merit, it must take other actions.  M.C.L. § 791.244(2)(c)-(j).  For example, while one member of the Parole Board is required to conduct a public hearing on all applications before recommending executive clemency, M.C.L. § 791.244(2)(f), a hearing before the board is not required on every application, but merely when the board is inclined toward recommending clemency, <u>Berry v. Department of Corrections</u>, 117 Mich. App. 494, 499-500(1982).

> he cannot make out an ex post facto claim. *Id*. at 1002-03; *See also Vertin v. Gabry*, 70 F.3d 116 (Table), 1995 WL 613692 (6th Cir. October 18, 2005) (rejecting *ex post facto* challenge involving the rescinding of Michigan's commutation guideline PD-DWA-45.12).

Lewis-El v. Simpson, No. 08-15060, (E.D. Mich. December 16, 2008)(Steeh, J.). See also Reed v. Sampson, No. 08-14380, 2009 WL 1384172, *2 (E.D. Mich. May 14, 2009) (Ludington, J.) ("Notwithstanding that conclusion, Plaintiff has not stated a claim under 42 U.S.C. § 1983 for an *ex post facto* violation. The Court is persuaded by Judge Steeh's well-reasoned analysis when addressing this issue in the 'identical' complaint in Lewis-El").

The Sixth Circuit has not addressed the issue of whether changes in commutation procedures can violate the *Ex Post Facto* Clause of the United States Constitution and the two circuit courts that have addressed this issue have reached conflicting holdings. In Mason v. Blanco, 269 Fed. Appx. 521 (5th Cir. 2008), the Fifth Circuit applied Garner and Morales while allowing a claim alleging that the application to the plaintiff of current Louisiana law governing the pardon and sentence commutation process violated the *Ex Post Facto* Clause. Mason, 269 Fed. Appx. at 522. As stated in that opinion, the Fifth Circurt allowed the claim because the plaintiff adequately pled facts that would show that, as applied to his own sentence, the new laws governing the process for obtaining a pardon or commutation of his sentence created a significant risk of increasing his punishment. However, in Snodgrass v. Robinson, 512 F.3d 999 (8th Cir. 2008), the Eighth Circuit found that, while changes to parole procedures may, in some circumstances raise *ex post facto* concerns, changes to procedures for commutation applications do not because "most parole procedures are distinct from the highly personal, policy oriented,

-18-

and legislatively unchecked authority of the Iowa governor to grant sentence commutations."

Snodgrass, 512 F.3d at 1002.  In doing so, the Eighth Circuit noted:

> The unpredictability of a wholly discretionary grant of commutation in Iowa
> precludes Snodgrass from demonstrating that the changes in Iowa's law raise a
> "significant risk" that she will be denied a commutation she otherwise would have
> received.  As such, she cannot demonstrate there is a significant risk her
> punishment will be longer than it would have been under former Iowa Code
> Section 902.2.  Accordingly, she cannot make out an *ex post facto* claim.
> *Morales*, 514 U.S. at 509, 115 S.Ct. 1597 (stating that where the changed law
> gives rise to "only the most speculative and attenuated possibility of ... increasing
> the measure of punishment ... such conjectural effects are insufficient under any
> threshold we might establish under the ex post facto clause").

Snodgrass, 512 F.3d at 1002-1003.

     While there is no binding authority directly on point, this court finds the reasoning put

forth by Judge Steeh in Lewis-El, and adopted by Judge Ludington in Reed, to be persuasive.

While parole provisions may violate the *Ex Post Facto* Clause in certain circumstances,

provisions relating to commutations are different in light of the power and discretion granted to

the executive branch.  To the extent the Fifth Circuit has ruled differently, this court would only

note that the Fifth Circuit was addressing Louisiana provisions regarding commutations and

pardons and not the Michigan provisions at issue in this case.

     **B. Summary Judgment**

     **1. Standard of Review**

     Defendants argue in the alternative that if they are not entitled to dismissal, they are

entitled to summary judgement.  The arguments with respect to the motion for summary

-19-

judgement only come into play if the district court rejects the recommendation to dismiss for failure to state a claim.

Defendants move for summary judgment pursuant to Fed. R. Civ. Pro. 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of <u>fact </u>to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348 (<u>quoting</u> <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

### 2. Ex Post Facto

As discussed above, the *Ex Post Facto* Clause of the Constitution, U.S. Const. art. I §§ 9 and 10, forbids the government from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed", <u>Weaver</u>, 450 U.S. at 28 (internal quotation omitted), and "[t]o fall within the *ex post facto* prohibition, two elements must be present: (1) the law must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it." <u>Reese</u>, 71 F.3d at 585. The *Ex Post Facto* Clause is intended to provide fair warning about new punishments and to discourage arbitrary and oppressive legislation. <u>Weaver</u>, 450 U.S. at 28.

In this case, defendants argue that they are entitled to summary judgment with respect to plaintiff's *ex post facto* claim because the Michigan Parole Board and the Governor of the State of Michigan do not have a "no commutation" rule for first-degree murders. In support of that assertion, defendants cite to an affidavit by defendant Sampson, who is the Michigan Parole Board Chairperson. In that affidavit, Sampson states that the Michigan Parole Board does not have a no commutation policy for first degree murders and that, in 2008, 26 first degree murders had public hearings on possible commutations and 17 of these went to the Governor with a merit

-21-

recommendation from the Michigan Parole Board. (Affidavit of Barbara Sampson, ¶¶ 8-9;

attached as Exhibit 2 to Defendants Thomas, Sampson, Berrios, Atterberry, Deboer, Hardman,

Booker and Quinlan's  Motion to Dismiss/Summary Judgment)

        In response to that evidence, plaintiff has requested discovery and submitted an affidavit

pursuant to Fed. R. Civ. P. 56(f).  Fed. R. Civ. P. 56(f) provides: "If a party opposing the motion

shows by affidavit that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be

obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just

order."   An affidavit required by Rule 56(f) to support a request for additional discovery must

indicate the need for discovery, what material facts may be uncovered, and why the information

has not been previously discovered.  Egerer v. Woodland Realty, Inc., 556 F.3d 415, 426 (6th Cir.

2009) (citing Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000).  In his affidavit,

plaintiff states that he has filed discovery requests in order to discover the necessity of a

recommendation by the Michigan Parole Board for there to be a commutation, the number of

favorable and unfavorable recommendations by the Michigan Parole Board, the number of times

that Michigan Parole Board has determined that on its own initiative that an application has merit,

the review procedures for a commutation in the case of an inmate sentenced to life without parole,

the standards use by the Michigan Parole Board and when those standards changed, as well as

statistics relating to pre-1992 recommendations.

-22-

In light of defendants' arguments and plaintiff's affidavit, and assuming that plaintiff has stated a claim upon which relief can be granted, there should be discovery and defendants' motion for summary judgment should be denied as premature.  Defendants filed their dispositive motions in lieu of filing an answer and there has been no discovery at all in this case.  Defendants' argument for summary judgment relies solely on evidence relating to the Michigan Parole Board's practice of recommending commutations and plaintiff has not had the chance to counter that evidence.  Additionally, plaintiff's affidavit sufficiently complies with Fed. R. Civ. P. 56(f) and he has indicated need for discovery and what material facts may be uncovered. Those material facts have not been previously discovered because plaintiff has not had the opportunity to conduct any discovery.  If the case goes forward, he should be given that opportunity and defendants' motions for summary judgment should be denied as premature, again, assuming plaintiff has stated a claim upon which relief can be granted.[3]

## IV. Conclusion

For the reasons discussed above, the court recommends that defendants' motion to dismiss be **GRANTED** and that plaintiff's complaint be dismissed for failure to state a claim upon which relief can be granted.

---

[3]To the extent defendants' motions are not deemed premature, they could also be denied because there would be a genuine issue for trial with respect to plaintiff's *ex post facto* claim. Sampson's affidavit merely states that the Michigan Parole Board made seventeen recommendations for commutation for the governor in 2008 and, while that evidence suggests that there is not a "no commutation" policy, it does not necessarily demonstrate that plaintiff was not disadvantaged by changes in the law.

-23-

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


                                    S/Virginia M. Morgan
                                    Virginia M. Morgan
                                    United States Magistrate Judge
Dated: August 6, 2009
_____

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff  via the Court's ECF System and/or U. S. Mail on August 6, 2009.

                                    s/Jane Johnson
                                    Case Manager to
                                    Magistrate Judge Virginia M. Morgan